UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON THIGPEN,<br><br>　　　　Petitioner,<br><br>　v.<br><br>M. MARTEL,<br><br>　　　　Respondent. | No. 2:19-cv-01001 KJM GGH P<br><br>FINDINGS AND RECOMMENDATIONS |

*Introduction and Summary*

　　　　Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c).

　　　　In this case, conceding that he was guilty of possession of marijuana, petitioner contests his disciplinary conviction for the assertedly more serious violation of in-prison "distribution" of marijuana-- even though under no version of the facts did petitioner actually transmit marijuana to any other person. However, in California prisons, distribution includes "solicitation of or conspiring with others in arranging for, the introduction of any controlled substance." Cal. Code. Regs. tit. 15, § 3000. Because the marijuana had to arrive in prison from someone getting it to petitioner, and the marijuana was packaged in a form conducive to distribution, fairminded jurists

1

could determine that petitioner distributed marijuana under the expanded definition of distribution. Accordingly, the undersigned recommends the petition be denied.

*Factual Background*

Petitioner concedes that he was found with marijuana on his person and in his cell. The undersigned will take the facts from the disciplinary conviction paperwork, ECF 14-1 at 24-26, 30. Reduced to the essential facts, petitioner was confronted by corrections officers, one of whom believed that petitioner was hiding something which looked like a white object in his mouth. After a minor tussle and commands to "spit it out!", one of the officers found the white object in between two bunks. The object was a "bindle" of marijuana, which when unwrapped, contained four smaller, wrapped bindles of marijuana. Petitioner was found guilty of violating Cal. Code Regs. tit. 15, § 3016 (c) [now (d)], distribution of marijuana. ECF No. 14-1 at 32. As a result, petitioner lost time credits and suffered other punishments.

Petitioner appealed his conviction through the second and third levels of administrative appeals contending that although he was guilty of possession of marijuana, he had not distributed it—the charge for which he was found guilty. See ECF No. 14-2 at 21-23, 17-18, respectively. Although the issue of insufficient evidence of distribution was clearly set forth at the second level, ECF No. 14-1 at 21, the appeal was somewhat confusingly denied on being "beyond the scope of this appeal." ECF No. 14-1 at 23. The denial at the third level was a conclusion that "[t]he appellant has failed to present compelling evidence and/or convincing argument to warrant modification of the decision reached by the institution." ECF No. 14-1 at 17.

Turning to the courts, petitioner's habeas petition was denied at the Superior Court level, on the explained basis that "[p]etitioner's argument ignores the evidence presented at the hearing that the single white bindle [footnote omitted] contained four (4) smaller individually -wrapped bindles [footnote omitted]….The packaging, including the fact that each bindle had a similar weight, suggests that Petitioner was distributing and constituters evidence that he was selling or dispensing." ECF No. 14-2 at 3. Petitioner receive summary denials of his habeas petitions at the Court of Appeal and Supreme Court levels. See ECF No. 14-3 at 99, 102.

////

2

*AEDPA Standards*

The last explained decision in the California Court system is presumed to have been adopted when the higher courts issue summary denials. See below. Therefore, petitioner must demonstrate that fairminded jurists could not have found, as did the Superior Court, that the evidence was sufficient to convict petitioner of distribution.

The statutory limitations of the power of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The text of § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 565 U.S. 34, 39 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)). Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 63-64 (2013) (citing Parker v. Matthews, 587 U.S. 37, 48 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003).

3

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, supra, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, supra, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, supra, 538 U.S. at 75 (it is "not enough that a federal habeas court, 'in its independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.'") "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court Judgment. Wilson v. Sellers, __U.S.__, 138 S.Ct. 1188, 1192 (2018). "[Section] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, supra, 562 U.S. at 100. Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100. Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a "federal habeas court must presume (subject to

4

rebuttal) that the federal claim was adjudicated on the merits." Johnson v. Williams, 568 U.S. 289, 293 (2013). When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, supra, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

The state court need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at its decision. Early v. Packer, 537 U.S. 3, 8 (2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, supra, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Id. at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, supra, 562 U.S. at 98. A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Harrington, supra, 562 U.S. at 98. *This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'"* Id. at 101 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (emphasis added). Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief

5

does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer, supra, 538 U.S. at 75).

With these principles in mind, the court turns to the merits of the petition.

*Discussion*

There is no issue raised concerning whether the court has habeas corpus jurisdiction, and it appears that jurisdiction is proper as lost time credits for a determinate sentence are involved.

Any petitioner convicted of a prison disciplinary violation has a very difficult time in showing insufficient evidence for that conviction:

> The standard for judicial review of a finding by a prison hearing officer is whether there is "some evidence" to support the hearing officer's conclusion. (*Superintendent v. Hill* (1985) 472 U.S. 445, 456–457; *In re Powell* (1988) 45 Cal.3d 894, 903–904.) The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. (*Superintendent v. Hill*, *supra*, at p. 457.) This standard is met if there was some evidence from which the conclusion of the hearing officer could be deduced. (Superintendent v. Hill, supra, at p. 455.) Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. (*Superintendent v. Hill*, *supra*, at p. 455–456.) Even just one piece of evidence may be sufficient to meet the "some evidence" requirement, if that evidence was "sufficient indicia of reliability." (*Bruce v. Ylst* (2003) 351 F.3d 1283, 1288; *Cato v. Rushen* (1987) 824 F.2d 703, 705 ["relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board" (citing (*Superintendent v. Hill*, (1985) 472 U.S. 445, 456–457].)

Givens v. McComber, No. 2:14-cv-2406 GEB KJN P, 2015 WL 6167660, at *4 (E.D. Cal. Oct. 20, 2015).

Two prison regulations are at issue here, the first of which is set forth in its entirety:

> (a) Inmates shall not use, inhale, ingest, inject, or otherwise introduce into their body; any controlled substance, medication, or alcohol, except as specifically authorized by the institution's/facility's health care staff.
>
> (b) Inmates shall not possess, manufacture, or have under their control any controlled substance, medication, or alcohol, except as specifically authorized by the institution's/facility's health care staff.

6

>   (c) Inmates shall not possess, exchange, manufacture, or have under their control any drug paraphernalia as defined by Health and Safety Code section 11014.5, or device related to the use, injection, or manufacture of any controlled substance, except as specifically authorized by the institution's/facility's health care staff.
>
>   (d) Inmates shall not distribute, as defined in Section 3000, any controlled substance.

Cal. Code Regs. tit. 15, § 3016.

The undersigned first notes in passing that petitioner's charge was a violation of subsection (c) (paraphernalia), not the "distribution" charge of present subsection (d). Given petitioner's initial conviction in November 2017, the only amendment to this regulation which possibly could be of pertinence is that issued in April of 2018, but the legal database does not give the substance of that amendment. See Cal. Code Regs. tit. 15 § 3016, Amendment 12. Assuming for the moment that the regulation was not re-lettered in 2018, technically, petitioner was convicted of the wrong subsection because his conviction does not relate to paraphernalia. However, that typographical error, if there was one,[1] need not detain the result here. Petitioner never raised an issue at his administrative hearings, in state courts, or here in this federal petition, that he did not have notice that he was defending a distribution charge. See ECF No. 14-1 at 17 (listing the specific violation as "Distribution of Controlled Substance"). At all times, petitioner has contended that he should have been found guilty of "possession," not "distribution." Id.

The second regulation defines "distribution":

>   Distribution means the sale or unlawful dispersing, by an inmate or parolee, of any controlled substance; or the solicitation of or conspiring with others in arranging for, the introduction of controlled substances into any institution, camp, contract health facility, or community correctional facility for the purpose of sales or distribution.

Cal. Code. Regs. tit. 15, § 3000.

////

////

---

[1] See In re Rothwell, 164 Cal. App. 4th 160, 168 (2008), referring to a distribution charge as a subsection (c) charge.

Clearly, if the issue here were only whether fairminded jurists could find that petitioner actually transmitted or dispersed unlawful substances, the answer would be "no;" there is simply no evidence of record demonstrating the transmission/dispersal. However, that is not the only issue. As the Superior Court recognized, the circumstances of the drug discovery lent an inference to believe that petitioner had cooperated/conspired with *someone* in order to obtain the marijuana he did obtain. After all, marijuana in prison simply does not drop from the sky unaided by other human effort, nor are there marijuana farms on prison premises cultivated solely by individual inmates. The latter part of the Cal. Code. Regs. section definition which penalizes cooperation in illegal drug introduction in prisons is equivalent to the better known—"possession with intent to distribute" language of many criminal illegal substance statutes see, e.g., 21 U.S.C.A. § 841(a)—which is part and parcel of any distribution prohibition. The Superior Court here understood that the circumstances of the marijuana discovery—bindles packaged within a larger bindle, in more or less equal amounts, indicated the very real potential of their being packaged for sale or some type of distribution in which more than one person was involved.

Again, the ultimate issue is not whether the undersigned or others might think the Superior Court got it wrong. The issue is, whether or not, a reasonable jurist could conclude that "some evidence" was presented satisfying the pertinent part of the Cal. Code Regs. definition (one ignored by petitioner). On the present record, the answer is, yes.

The undersigned recognizes that the amount of marijuana involved matters in determining personal possession versus potential for distribution, and there was not much marijuana involved here. The undersigned may take judicial notice of the fact that it takes approximately 28.35 grams to equal a solitary ounce of matter. The gram content of the entire amount of marijuana reported at ECF No. 14-1 at 25-26 was 3.01 grams (less than one ninth of an ounce), and each of the four bindles ranged from .65 grams to .73 grams—*each bindle being less than .04 of an ounce.* Not speaking from personal experience, but that is not much marijuana in anyone's definition of an amount of marijuana in excess of what may be considered "personal use." See Cal. Health & Safety Code §§ 11362.1, 11357 (defining non-criminal personal use as involving amounts as high as slightly in excess of one ounce (28.5 grams)). See also In re Rothwell, supra,

8

164 Cal. App. 4th at 168 (which questioned whether a distribution-in-prison charge would be possible where the only circumstance involved was possession of .14 grams of heroin.[2])

However, prisons are not the outside world, and the regulation at issue involves the distribution of *any* amount of controlled substances with the added proviso that distribution was the purpose of the possession. Here, the packaging of the marijuana caught the eye of the Superior Court as a distribution defining circumstance and the undersigned cannot label the distribution finding based thereon as AEDPA unreasonable.

*Conclusion*

It is certainly possible that petitioner possessed the marijuana in question only for personal use. However, under AEDPA standards, it was reasonable for the California Department of Corrections and Rehabilitations and state courts to find that "some evidence" existed sufficient to demonstrate that petitioner violated Cal. Code. Regs. tit. 15, § 3016 (c) (now (d)). The petition should be denied. However, given the amount of marijuana at issue, a certificate of appealability should be issued.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be denied; and
2. The District Court issue a certificate of appealiabilty referenced in 28 U.S.C. § 2253.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are

////

////

---

[2] *Cf* Turner v. United States, 396 U.S. 398, 422-423 (1970) (fourteen ounces of cocaine insufficient to show distribution); see United States v. Ramirez, 608 F.2d 1261, 1264 (9th Cir. 1979) (given circumstances of case, including small dosage in a typical use, distribution shown with five ounces of cocaine).

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 9, 2019

                                   <u>/s/ Gregory G. Hollows</u>
                              UNITED STATES MAGISTRATE JUDGE